Michael Connett (Bar No. 300314)
**SIRI & GLIMSTAD LLP**
700 S Flower Street, Suite 1000
Los Angeles, CA 90017
Tel: (212) 532-1091
E: mconnett@sirillp.com

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| **MICKEY A. STITHEM**, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**APPLE INC.** and **THE APPLE INC. BENEFITS ADMINISTRATIVE COMMITTEE**,<br><br>Defendants. | **Civil Action No.:**<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Mickey A. Stithem ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Apple Inc. ("Apple") and the Apple Benefits Administrative Committee (the "BAC") (collectively, the "Defendants") based upon personal knowledge with respect to

1

CLASS ACTION COMPLAINT

herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.   It is both unfair and unlawful for entities like Apple to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products without making available a reasonable alternative standard to avoid those surcharges. This lawsuit challenges Defendants' unlawful practice of charging a "tobacco surcharge" under the Apple Health and Welfare Benefit Plan (the "Plan") in a manner that violates the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. ERISA permits health-contingent wellness programs that promote health if, and *only if*, such programs strictly comply with the criteria governing these programs, including: (i) offering a meaningful and accessible *reasonable* alternative standard to any individual being charged extra based on a health factor; (ii) clearly disclosing the availability of that alternative standard in "all plan materials" describing the surcharge; and (iii) making available the "full reward" to "all similarly situated individuals." *See* 29 U.S.C. § 1182; 42 U.S.C. § 300gg-4(j). Instead, Defendants impose a discriminatory tobacco surcharge without making available, or notifying participants of, a *reasonable* alternative standard that provides all those who satisfy it with the full reward that non-smokers receive,

2

CLASS ACTION COMPLAINT

violating federal regulations and depriving employees of benefits to which they are entitled under ERISA.

2.  Tobacco surcharges have become more prevalent in recent years but to be lawful plans must make available a *compliant* "wellness program" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers ***must*** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe harbor. Employers can only invoke this safe harbor if they can demonstrate full compliance with all the requirements.

3.  ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that for plans to be compliant, an employer must provide a

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

3

CLASS ACTION COMPLAINT

clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard; plans must also provide proper notice to all participants. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Defendants' Plan imposes a tobacco surcharge while conditioning the availability of the "full reward" on strict timing requirements that effectively limit relief to prospective avoidance only, thereby denying participants the full plan-year value of the reward and retroactive reimbursement required by ERISA, and further failing to provide proper notice.

4.     Defendants' Plan is structured in a manner that conditions access to the full reward on the timing of a participant's completion of the alternative standard, rather than providing the full plan-year value of the reward as required by ERISA. As a result, many participants who complete the alternative standard after incurring the surcharge are denied retroactive reimbursement and receive, at most, prospective relief. This design transforms the purported "reward" into a limited, conditional benefit that fails to satisfy the regulatory requirement that participants be able to obtain the full reward.

4

CLASS ACTION COMPLAINT

5.    The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements.

6.    Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain

---

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

5

CLASS ACTION COMPLAINT

the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same, full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual participating in the program* should be able to receive *the full amount of any reward or incentive* . . .." *Id.*, 33160 (emphasis added). Defendants violate these requirements by administering a program that conditions access to the full reward on when a participant completes the alternative standard, rather than ensuring that all participants receive the same, full plan-year value of the reward regardless of timing. Under Defendants' Plan, participants who complete the alternative standard after incurring the surcharge are denied retroactive reimbursement and are limited to prospective relief, resulting in unequal and reduced rewards

---

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward must be provided to that individual* as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative

6

CLASS ACTION COMPLAINT

compared to similarly situated individuals who are tobacco-free. This timing-based limitation transforms the purported "reward" into a partial and conditional benefit and operates as an impermissible penalty, in direct contravention of ERISA's wellness program regulations.

7.

8.     Defendants cannot qualify for the statutory safe harbor because, while it imposes a health-based surcharge, it does not comply with the requirements for lawful wellness program. The Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied," (*id.*, 33160; emphasis added) for a wellness program to be lawful under ERISA. Final Regulations, 33160. Its core deficiency is that it does not make available a reasonable alternative standard that provides the "full reward" to ***all*** similarly situated individuals who complete it, as required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). Although Defendants represent that the surcharge may be "removed and reimbursed," the Plan conditions that relief on when a participant completes the alternative standard, such that participants who complete the five coaching calls outside of the 90 day period are denied retroactive reimbursement and receive only partial, prospective relief. This timing-based limitation results in unequal rewards among similarly situated participants and

on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

impermissibly reduces the value of the reward in contravention of ERISA's requirements. To that extent, Defendants fail to make available a clearly defined, *reasonable* alternative standard that ensures employees who satisfy that standard receive a full refund of the $50.00 monthly surcharges that are withheld from participants' paychecks. Instead, Defendants use these unlawfully obtained funds to offset their own contributions to the Plan, which allows additional money to remain in Defendants' accounts on which the company earns interest. By increasing participant contributions through this surcharge, Defendants shift costs away from itself and onto participants.

9.      Defendants also violate ERISA's wellness program regulations by failing to provide the notice required by statute and regulation, which is an independent basis for liability. Federal law requires that a plan "disclose in **all plan materials** describing the terms of the wellness program the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E) (emphasis added). Defendants' participant-facing materials describe the tobacco surcharge and the higher premium contributions imposed on tobacco users, but do not disclose a *compliant* alternative avenue that provides all similarly situated individuals with the full reward. Specifically, Defendants' Summary Plan Description ("SPD") fails to provide contact information for accessing the program and fails to describe a reasonable alternative standard by

CLASS ACTION COMPLAINT

which all participants can obtain the full reward. *See* 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v). Further, upon information and belief, Defendants provide other participant-facing materials that fail to include the necessary notice disclosures, including the benefit enrollment process. Nor do the enrollment forms include the required disclosures that must be presented to participants who do not qualify for the initial standard (i.e., the individuals who use tobacco). As a result, participants are not meaningfully informed of how to avoid or recover the surcharge, and Defendants' disclosures fail to satisfy ERISA's requirement that "all plan materials" discussing the surcharge and wellness program adequately describe the availability of a *reasonable* alternative standard.

10.    Because Defendants impose a $50 monthly tobacco surcharge and do not provide all similarly situated individuals with the full reward or provide the required notice in all Plan materials discussing the surcharge, the Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied." Final Regulations, 33160. As a result of these deficiencies, Defendants cannot take advantage of the statutory safe harbor and, therefore, the surcharge functions as a penalty rather than a compliant wellness incentive. Deficient and misleading notice is a fundamental violation of ERISA's core anti-discriminatory purpose: ensuring that participants have a fair and compliant opportunity to be treated the same as non-smokers.

CLASS ACTION COMPLAINT

11.    Defendants also breached their fiduciary duties under ERISA by collecting and retaining tobacco surcharge payments from participants in a manner inconsistent with governing law and using those funds to offset their own Plan-related contributions. Rather than holding participant contributions for the exclusive benefit of the Plan, Defendants commingled surcharge payments with the company's general assets and employer funds, allowing those amounts to reduce Defendants' financial obligations while participants were denied the full reward required by law. This misuse of participant-funded surcharges constitutes a breach of the duties of loyalty and prudence and gives rise to equitable relief, including disgorgement of any profits or financial benefits derived from Defendants' unlawful conduct.

12.    This Complaint alleges that Defendants impose a health-based tobacco surcharge without making available a compliant alternative standard to avoid the surcharge. Defendants bear the burden of proving that their tobacco surcharge is lawful by showing that their wellness program fully complies with *every* requirement under ERISA. Charging participants a tobacco surcharge while not informing them of a *reasonable* alternative standard that makes available the "full reward," and failing to provide proper notice makes the surcharge facially noncompliant. No amount of *post hoc* justifications can cure these fundamental defects. These types of intentional barriers and restrictions to avoiding health-based surcharges limit engagement with

10

CLASS ACTION COMPLAINT

the program, deter participants from making the effort to improve their health, and prevent employers from taking advantage of the statutory safe-harbor. Defendants' Plan is not a "program[] of health promotion or disease prevention" as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

13.    Participants like Plaintiff are permitted to challenge a surcharge when there is no compliant wellness program made available or when employers provide deficient or misleading information. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions along with facts showing the deficiencies in the wellness program, the burden shifts to the employer, Apple, to demonstrate that the wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the "full reward" and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming "that 'the burden of persuasion as to certain elements of a plaintiff's claim may be shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

14.    Plaintiff is an employee of Apple who paid the unlawful tobacco surcharge, and continues to pay it, to maintain health insurance coverage under the Plan for her and her family. This surcharge imposed an additional financial burden on

11
CLASS ACTION COMPLAINT

Plaintiff and her family and continues to impose such a burden on those similarly situated.

15.     Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Defendants from continuing to profit from their violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendants are fiduciaries of the Plan who have a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of herself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendants' ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

16.     Plaintiff is, and at all times mentioned herein was, an individual citizen of the State of Oklahoma residing in the County of Canadian. Plaintiff is an employee of Apple, who paid, and continues to pay, a tobacco surcharge of $50 (roughly $600 annually) under the Plan. Plaintiff is required to pay this tobacco surcharge to maintain health insurance under the Plan.

17.     Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

12
CLASS ACTION COMPLAINT

18.    Defendant Apple is a Delaware corporation with its principal place of business in Cupertino, California. Apple is a global technology company that designs, manufactures, and sells consumer electronics, software, and services, and operates throughout the United States and the world. At all relevant times, Apple sponsored, maintained, and administered the Plan. Apple exercised discretionary authority and control over the design and administration of the Plan, including the determination and collection of participant premium contributions and the implementation of the tobacco surcharge, and therefore acted as a fiduciary within the meaning of ERISA.

19.    Defendant BAC is, upon information and belief, an unincorporated entity and the named fiduciary and administrator of the Plan within the meaning of ERISA §§ 3(16)(a) and 402(a) that manages and administers the Plan's daily operations. Upon information and belief, the BAC is situated in Cupertino, California.

20.    At all relevant times, Apple employed tens of thousands of employees and maintained a Plan covering a substantial number of participants and beneficiaries. The Plan is an employee welfare benefit plan subject to ERISA, 29 U.S.C. § 1002(1) and (3). As of December 31, 2024, the Plan covered more than 100,000 participants.

**JURISDICTION AND VENUE**

21.    The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal

CLASS ACTION COMPLAINT

statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

22. This Court has personal jurisdiction over Defendants because Defendants have significant operations in this District, Plaintiff's claims and the claims of all others similarly situated arise from the acts and omissions of Defendants with respect to their activities and conduct concerning Plaintiff in the State of California, and Defendants have purposefully availed itself of the privilege of conducting business in the State of California.

23. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because the Plan is administered in this District, Defendants conduct business in this District, and Defendants may be found in this District.

## FACTUAL BACKGROUND

### DEFENDANTS' TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

### A. Statutory and Regulatory Requirements

24. To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may

14

CLASS ACTION COMPLAINT

not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

25.    The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to *programs of health promotion and disease prevention*" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe harbor exception—must strictly adhere to the mandated regulatory requirements.

26.    Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements,

which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

27. Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

28. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163 (emphasis added). "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against

16
CLASS ACTION COMPLAINT

participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

29.    The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section *only if **all** of the [] requirements are satisfied*." (emphasis added)).

### B. Regulatory Criteria

30.    To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

CLASS ACTION COMPLAINT

(a)    Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b)    Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii).

(c)    Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii).

(d)    Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e)    Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard;

18

CLASS ACTION COMPLAINT

(b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

31.    The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

32.    Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

33.    A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, *every individual* participating in the program should be able to receive the *full amount of any reward or incentive*. . .." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward,"

19

CLASS ACTION COMPLAINT

providing the "full reward" to every participant is *mandatory*, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, *the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year*. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine *how* to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) *as long as . . . the individual receives the full amount of the reward*.

Final Regulations, 33163 (emphases added).

34.    The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

35.    For health contingent wellness programs, the Final Regulations require the notice be disclosed "in *all* plan materials describing the terms of" the program. 42

20

CLASS ACTION COMPLAINT

U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge their participants more and fail to inform participants of a reasonable alternative standard to the surcharge violate these requirements.

## DEFENDANTS CANNOT AVAIL THEMSELVES OF ERISA'S SAFE HARBOR

36.     Defendants' tobacco surcharge is discriminatory because Defendants do not make available a *compliant* outcome-based wellness program that ensures that all similarly situated individuals obtain the full reward upon completion of an alternative standard during the Plan year. Under the Plan, participants identified as tobacco pay a tobacco surcharge of approximately $22.22 per paycheck (roughly $50 per month), which is collected through employees' regular tax payroll deductions for medical coverage. The surcharge applies continuously unless and until participants satisfy Defendants' imposed conditions.

37.     Defendants violate the "full reward" requirement by conditioning relief from the surcharge on when a participant completes the alternative standard. The Plan

21

CLASS ACTION COMPLAINT

provides that participants may enroll in a tobacco cessation program and obtain relief from the surcharge, but only if they complete the program within a specified and limited timeframe: within 90 days of the effective date. Participants who do not complete the program within that timeframe are denied retroactive reimbursement and receive, at most, prospective relief. As a result, similarly situated participants receive materially different rewards based solely on timing, in direct contravention of ERISA's requirement that the same, full reward be available regardless of when the alternative standard is satisfied during the plan year.

38.    These arbitrary timing restrictions render the purported "reasonable alternative standard" unreasonable within the meaning of ERISA's wellness program regulations. A reasonable alternative standard must be uniformly available and must not impose conditions that result in similarly situated individuals receiving disparate economic outcomes for completing a reasonable alternative standard in the same plan year. By requiring completion of a cessation program within a rigid and compressed timeframe that undermines the *value* or what participants receive, Defendants force participants to either rush through a program or forfeit the ability to recover surcharges already paid. This structure is inconsistent with the statute and with regulatory guidance that participants should not be pressured to complete programs under threat of continued financial penalties.

CLASS ACTION COMPLAINT

39. Defendants' program is therefore not reasonably designed to promote health or prevent disease. Instead, it is structured to maximize the collection of tobacco surcharges by limiting participants' ability to obtain meaningful relief. Participants who are unable to complete the cessation program within the imposed timeframe—whether due to medical, logistical, or personal circumstances—are effectively locked into paying the surcharge for the duration of the Plan year.

40. By conditioning access to the full reward on rigid and arbitrary timing requirements, Defendants transform the wellness program from a lawful incentive into an impermissible penalty. The rules require that participants who complete a reasonable alternative standard receive the same reward as those who satisfy the initial standard. Defendants' program does the opposite because it provides diminished benefits to those who complete the program later in the year and thereby violating ERISA's antidiscrimination principles.

41. Defendants' disclosures also fail to satisfy ERISA's independent notice requirements because, although the Plan references a tobacco cessation program as an alternative standard, it does not disclose a *compliant* reasonable alternative standard within the meaning of the statute and regulations. The alternative described is not reasonable because it conditions access to the full reward on rigid timing requirements (i.e., completion within 90 days and a change in status 30 days thereafter) thereby

23

CLASS ACTION COMPLAINT

resulting in similarly situated participants receiving materially different economic treatment depending on when they complete the program. By presenting this defective alternative as the sole pathway to relief, Defendants fail to disclose the availability of a reasonable alternative standard that would allow participants to obtain the same, full reward as required by law.

42. Further, upon information and belief, Defendants send participant-facing materials that fail to include the information required to make any alternative standard meaningfully accessible. The SPD does not clearly provide contact information or instructions for accessing the cessation program, nor does it adequately explain participants' rights to pursue an alternative standard that would provide equivalent relief. Upon information and belief, other materials describing or implementing the tobacco surcharge likewise omit the required disclosures, including clear notice of the availability of a reasonable alternative standard and the required physician-accommodation statement. These deficiencies render Defendants' disclosures incomplete and noncompliant and independently preclude reliance on ERISA's safe harbor

43. Defendants' purported "reasonable alternative standard" is not reasonable within the meaning of ERISA's wellness program regulations. Rather than providing a flexible and genuinely accessible pathway to obtain the reward,

24

CLASS ACTION COMPLAINT

Defendants require participants to complete an entire tobacco cessation program consisting of at least 5 coaching call within a compressed and rigid timeframe of approximately ninety (90) days. This structure imposes an arbitrary and burdensome condition that many participants cannot realistically satisfy due to work obligations, caregiving responsibilities, medical circumstances, or the nature of tobacco cessation itself, which often requires sustained and individualized timelines. By forcing participants to complete a multi-step program within a short and inflexible window, Defendants' program is not reasonably designed to promote health or prevent disease but instead operates to limit access to relief.

44.    Defendants' program further violates the reasonableness requirement because it pressures participants to rush through a cessation program under threat of continued financial penalties. The rules make clear that wellness programs must not be structured in a manner that makes it unduly difficult for participants to obtain the reward. Here, participants must complete all required program components within the arbitrarily imposed ninety-day window or forfeit the ability to obtain meaningful relief. This design deters participation, penalizes those who cannot comply within the prescribed timeframe, and undermines the stated goal of promoting health.

45.    By conditioning access to the full reward on completion of a multi-step cessation program within a rigid ninety-day period, Defendants ensure that many

25

CLASS ACTION COMPLAINT

participants will be unable to obtain the full Plan-year value of the reward, even if they ultimately satisfy the program's requirements. This structure transforms the purported "reward" into a partial and conditional benefit, depriving participants of retroactive reimbursement and allowing Defendants to retain surcharge payments. Such a design violates both the requirement that the alternative standard be reasonable and the mandate that the same, full reward be made available to all participants who complete it.

46.    Had Defendants structured the program in compliance with ERISA, by eliminating arbitrary timing restrictions and clearly disclosing a compliant reasonable alternative standard, participants who completed the cessation program at any point during the Plan year would have been able to obtain the full reward, including reimbursement of surcharges already paid. Accordingly, the opportunity presented would have been compliant. Instead, Defendants' rigid timing requirements and deficient disclosures ensure that many participants are unable to recover those amounts, even after successfully completing the program.

47.    Plaintiff paid the tobacco surcharge and was not informed that Defendants' program conditioned access to the full reward on completing the cessation program within a limited timeframe. Had Defendants provided clear and compliant disclosures and a genuinely reasonable alternative, Plaintiff and similarly

situated participants could have taken timely steps to obtain the full reward. Instead, they were deprived of the meaningful opportunity guaranteed by ERISA and subjected to ongoing financial penalties based on a health factor.

48.    The combination of rigid timing requirements and deficient disclosure reflects a program designed to generate revenue and shift costs onto participants rather than to promote health. By limiting access to the full reward and failing to make a compliant alternative meaningfully available, Defendants ensure that surcharge payments are retained and used to offset Plan expenses, thereby benefiting Defendants financially at the expense of participants

49.    Allowing entities like Apple to exploit participants and unlawfully extract millions of dollars annually from them without making available a compliant wellness program transforms the surcharge into a "subterfuge for discrimination" and undermines ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employees in violation of federal law. This type of conduct violates not only ERISA's antidiscrimination rules governing wellness programs but also the statute's fiduciary duties of loyalty and prudence, as Defendants failed to administer the Plan solely in the interest of participants.

27

CLASS ACTION COMPLAINT

## DEFENDANTS' SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

50.    Defendants administered the tobacco surcharge by designating which participants are charged and withholding the premium differential directly from participants' paychecks as a plan contribution, alongside required premium deductions. These deductions are part of the funding stream for Plan coverage, not separate penalties, and are treated the same way as other contributions made to support the Plan's medical benefits.

51.    The governing Plan documents make clear that medical coverage is funded by both employer and participant contributions. Defendants commit a defined company contribution amount toward the cost of coverage, with participants paying the balance. By layering a tobacco surcharge on top of those required participant contributions, Defendants created what should have been a third stream of funding available to the Plan: (1) participants' required premium contributions, (2) Defendants' promised company contribution amount, and (3) the additional tobacco surcharge. But instead of allowing all three funding streams to flow into the Plan, Defendants used the tobacco surcharge to offset or reduce the company's funding obligation. Because the cost of coverage for each tier is fixed, every dollar of surcharge collected reduced the company's contribution dollar-for-dollar. Thus, rather

CLASS ACTION COMPLAINT

than increasing resources available to the Plan, the surcharge simply shifted costs away from Apple and onto participants.

52. This practice constitutes classic self-dealing because Defendants used the mechanisms of the Plan to realize savings for the company, depriving the Plan of the full benefit of the three distinct funding streams it should have received. Defendants' actions caused the Plan to lose the very employer contributions it was otherwise supposed to receive, in violation of ERISA's fiduciary duty standards.

53. In doing so, Defendants failed to act solely in the interest of participants and beneficiaries, as ERISA requires. Rather than use the surcharge proceeds to, for example, offset the premiums of non-smokers, Defendants used the funds to save money for themselves. Upon information and belief, the money that Defendants did not have to contribute to the Plan sat in Defendants' accounts and earned interest, while the Plan was deprived of the full amount of funding it should have received, stripping the Plan of employer dollars it was owed and converting those savings into financial benefit for Defendants. This diversion of funds is self-dealing, violates the duty of loyalty, and constitutes a prohibited transaction under ERISA §§ 404 and 406.

## CLASS DEFINITION AND ALLEGATIONS

29

CLASS ACTION COMPLAINT

54.    Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

55.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendants.

56.    Excluded from the Class are Defendants' officers and directors.

57.    Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

58.    The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a) and (b)(1).

59.    **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendants' conduct as alleged herein, the identity of whom is within the knowledge of Defendants and can be easily determined through Defendants' records.

30

CLASS ACTION COMPLAINT

60. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

    a. Whether Defendants' tobacco surcharge discriminates against participants based on a health status related factor;

    b. Whether Defendants make available a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;

    c. Whether Defendants provided the required notice in *all* the Plan materials describing the surcharge;

    d. Whether Defendants provided the required statement that participants' personal physicians' recommendations would be accommodated in all Plan materials describing the surcharge;

    e. Whether Defendants' wellness program violates ERISA and the Final Regulations;

    f. Whether Defendants breached their fiduciary duties by collecting and retaining the tobacco surcharge to offset their own contributions to the Plan;

    g. Whether Defendants breached their fiduciary duties by administering the Plan in a way as to refuse reimbursing participants who complete the alternative standard offered;

    h. Whether Defendants breached their fiduciary duties by failing to periodically review the terms of their wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

    i. Whether Apple breached its fiduciary duty by failing to monitor the activities of the BAC;

    j. The appropriate mechanisms to determine damages on a class-wide basis.

61. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the

31

uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

62. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendants and were harmed by Defendants' misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

63. Plaintiff seeks declaratory and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendants will be allowed to profit from their unfair and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide declaratory relief is

issued, Defendants may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION
## COUNT I
### UNLAWFUL SURCHARGE – FAILURE TO PROVIDE A REASONABLE ALTERNATIVE STANDARD
### (Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv))

64.    Plaintiff re-alleges and incorporates herein by reference allegations 1–63 of this Complaint.

65.    Defendants unlawfully impose a tobacco surcharge on participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges of approximately $50 per month on participants who use tobacco, without complying with the statutory and regulatory requirements governing outcome-based wellness programs, Defendants violate ERISA § 702(b), 29 U.S.C. § 1182(b)(1), and 29 C.F.R. § 2590.702(f)(4). Although Defendants purport to offer an alternative standard, that standard is not reasonable and does not make the full reward available. Instead, Defendants condition relief on completion of a multi-step cessation program within a rigid and limited timeframe (i.e., within ninety (90) days) thereby preventing many participants from obtaining the full Plan-year value of the reward. By imposing these arbitrary timing restrictions and denying retroactive reimbursement to participants

33
CLASS ACTION COMPLAINT

who complete the program outside that window, Defendants operate a discriminatory premium differential that fails to satisfy ERISA's requirements.

66.    ERISA's wellness program regulations require that the "full reward" associated with an outcome-based wellness program be made available to "all similarly situated individuals" who satisfy the applicable standard, including through completion of a reasonable alternative standard, regardless of when during the plan year the standard is satisfied. Defendants' program fails this requirement. Participants who do not initially qualify as non-tobacco users must complete a cessation program subject to strict timing conditions, and those who complete the program after incurring surcharges are denied retroactive reimbursement and receive, at most, prospective relief. As a result, similarly situated participants receive materially different economic outcomes based solely on the timing of completion. This structure deprives participants of the full reward and results in unequal and reduced benefits in violation of 29 U.S.C. § 1182(b)(2)(B), 42 U.S.C. § 300gg-4(j), and 29 C.F.R. § 2590.702(f)

67.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this

34

CLASS ACTION COMPLAINT

title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendants' surcharge program does not satisfy the criteria that plans **must** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendants cannot qualify for the statutory safe harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

## COUNT II
### UNLAWFUL SURCHARGE – FAILURE TO PROVIDE REQUIRED NOTICE
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(v))**

68.    Plaintiff re-alleges and incorporates herein by reference allegations 1–63 of this Complaint.

69.    Defendants' tobacco surcharge program is not and was not a permissible wellness program because it failed to provide proper notice of the availability of a *reasonable* alternative standard, in violation of 29 C.F.R. § 2590.702(f)(4)(v).

70.    Defendants' key Plan materials, including the SPD and benefit guides, describing the tobacco-related premium differential fail to provide the disclosures required for an outcome-based wellness program. The materials did not inform participants of a *reasonable* alternative standard during the Plan year that would entitle "all similarly situated individuals" to the same premium relief afforded to non-

35

tobacco users or provide sufficient contact information to access the alternative standard.

71.    These notice failures independently violate ERISA's wellness program regulations, which require that "all plan materials" describing a health-contingent wellness program clearly disclose contact information for accessing a reasonable alternative standard. Upon information and belief, Defendants distributed other participant-facing communications describing or implementing the tobacco-related premium differential without including the required disclosures, further compounding these violations and precluding Defendants from invoking ERISA's wellness program safe harbor.

72.    Defendants' imposition of the tobacco surcharge therefore constitutes unlawful discrimination based on a health-status-related factor in violation of 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4.

73.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendants' surcharge program does not satisfy the criteria that plans **must** comply with to qualify as a

compliant "program[] of health promotion and disease prevention," Defendants cannot qualify for the statutory safe harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

## COUNT III
### BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)
### (Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)

74. Plaintiff re-alleges and incorporates herein by reference allegations 1–63 of this Complaint.

75. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

76. Instead of loyally and prudently acting in the best interests of Plan participants, Defendants chose to use Plan assets to benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco

37
CLASS ACTION COMPLAINT

surcharges from participants' paychecks and using these funds to offset the company's own contribution obligations. These surcharges were collected as before tax deductions, alongside other contributions to the Plan, and thus were Plan assets from the moment of collection. Defendants breached their fiduciary duties by assessing and collecting the tobacco surcharge in violation of federal law and in violation of the terms of the Plan and then diverting those funds to reduce their own costs. The Plan should have received three funding streams: (1) employee premium contributions, (2) Apple's contribution amount, and (3) the surcharge itself. But Defendants used the surcharge amounts to offset the company's own contributions shifting the costs associated with the Plan from itself to participants like Plaintiff. Upon information and belief, Apple further profited by retaining additional monies in their own accounts, earning a float, and failing to remit the full employer contribution owed to the Plan.

77. Year after year, the BAC administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21). Upon information and belief, the BAC has discretionary authority for how the surcharge proceeds are used. It also decided not to offer reasonable alternative standards that would have enabled "all similarly situated individuals" to receive the same full reward for the entire plan year. By deciding to funnel surcharge funds into

38

CLASS ACTION COMPLAINT

the employer's claims account while refusing to reimburse participants, the BAC ensured that participants, not the employer, bore the Plan's costs.

78.    Upon information and belief, the BAC controlled and disseminated Plan communications including, benefits guides and summary plan descriptions describing the premium differential but failed to include notice of a *reasonable* alternative standard. The BAC also failed to conduct periodic, prudent reviews of the wellness program and related communications to ensure compliance with ERISA. Instead, it allowed a defective program that denied retroactive relief to persist year after year, despite its discriminatory effect and clear inconsistency with the full reward rule.

79.    The BAC further breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by permitting surcharge funds to reduce Apple's own contribution obligations and by maintaining a program that withheld reimbursement from participants who completed the reasonable alternative standard. It also failed to notify participants in all plan materials discussing the surcharge of all the avenues by which to avoid the surcharge, as required by 29 C.F.R. § 2590.702(f)(4)(v). These omissions and misrepresentations are incompatible with ERISA's fiduciary mandates of loyalty, prudence, and adherence to governing law.

CLASS ACTION COMPLAINT

80.    ERISA also imposes on appointing fiduciaries (i.e., Apple) the duty to monitor and supervise the actions of those administering the Plan (i.e., the BAC). By allowing administrators and benefits staff to implement and maintain a non-compliant wellness program that violated ERISA's notice and full-reward requirements, Apple breached its duty to monitor. Apple failed to review the program's design, the disposition of surcharge proceeds, and the accuracy of participant communications, despite its obligation to ensure the Plan's ongoing compliance with federal law.

81.    As a result of these breaches, Apple was unjustly enriched at the expense of the Plan and its participants. By deducting surcharges directly from employees' paychecks without administering a compliant wellness program or providing full-year reimbursement, the BAC secured financial savings for the employer while shifting costs to participants. The structure and administration of the program ensured that not all "similarly situated individuals" could receive the full reward, and participants were deprived of clear notice of the reasonable alternative standard. In effect, Defendants converted employee contributions (i.e., Plan assets) into a source of corporate savings, in violation of 29 U.S.C. § 1104(a)(1)(A).

82.    By withholding unlawful surcharges and using those funds to offset Apple's financial obligations, Defendants caused the Plan to engage in transactions constituting a direct or indirect transfer of Plan assets for the benefit of a party-in-

interest—namely, Apple—in violation of 29 U.S.C. § 1106(a)(1). Apple is a party-in-interest under 29 U.S.C. § 1002(14) because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's administration and finances.

83.    By retaining and applying the tobacco-surcharge amounts to its own benefit, Apple increased its corporate assets and reduced the funds it was otherwise obligated to contribute to the Plan. Such conduct constitutes self-dealing prohibited by ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1). The surcharges should have supplemented, not displaced, employer contributions. Instead, Defendants' actions deprived participants of the full reward and used participant-paid Plan assets to subsidize Apple's costs, leaving the Plan underfunded relative to what it should have received.

84.    Defendants breached their fiduciary duties by: administering a noncompliant Plan; failing to offer a *reasonable* alternative standard that makes available the "full reward" to participants; failing to properly disclose material information about participants' rights under the wellness program; acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for years, to ensure compliance with ERISA's requirements. These breaches caused Plaintiff and the

41

CLASS ACTION COMPLAINT

Class to incur unlawful surcharges that shifted costs to participants and away from Defendants. Had Defendants complied with their fiduciary duties, they would have noticed the deficiencies in their program, communications, and use of funds, and it would have taken steps to correct the behavior.

85.    As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

86.    Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Defendants are liable to: make good to the Plan all losses resulting from their breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through their violations, as alleged herein.

## COUNT IV
### BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)
### (Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)

87.    Plaintiff re-alleges and incorporates herein by reference allegations 1–63 of this Complaint.

42
CLASS ACTION COMPLAINT

88.    At all relevant times, Defendants were administrators of the Plan and were fiduciaries in that they exercised discretionary authority and control over the management of the Plan's assets.

89.    ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan*, 680 F.2d at 270 n.8.

90.    Instead of loyally and prudently acting in the best interests of Plan participants, Defendants chose to use Plan assets to benefit the company, to the detriment of Plaintiff and other similarly situated individuals, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks. Year after year, the BAC administered a noncompliant Plan and wellness program. The BAC administered the Plan by exercising discretionary authority over how surcharge proceeds were handled, whether participants would receive the "full reward," and by communicating with participants about their rights under the Plan.

CLASS ACTION COMPLAINT

91.    Upon information and belief, BAC controlled and disseminated to all employees the benefit guides and other Plan communications discussing the premium differential but failed to notify them of all the ways by which they could avoid the entire year of surcharges. The BAC further failed to conduct periodic or prudent reviews of the surcharge and wellness program, and the related communications, to ensure compliance with ERISA and its regulations. Instead, Defendants allowed a structurally defective wellness program to persist year after year, even though it resulted in discriminatory surcharges and deprived the Plan of the employer contributions it should have received.

92.    The BAC breached their fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. Defendants acted disloyally by using ill-gotten funds to shrink Apple's own financial contributions. It also failed to properly notify participants, year after year, of a compliant wellness program and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

93.    ERISA also imposes on appointing fiduciaries (i.e., Apple) the duty to monitor and supervise the actions of those administering the Plan (i.e., the BAC). By allowing administrators and benefits staff to implement and maintain a non-compliant wellness program that violated ERISA's notice and full-reward requirements, Apple

CLASS ACTION COMPLAINT

breached its duty to monitor. Apple failed to review the program's design, the disposition of surcharge proceeds, and the accuracy of participant communications, despite its obligation to ensure the Plan's ongoing compliance with federal law.

94.    Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce the company's financial obligations to the Plan, Defendants engaged in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, Apple—in violation of 29 U.S.C. § 1106(a)(1). Defendants are parties in interest, as defined under 29 U.S.C. § 1002(14), because they are both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's assets.

95.    By retaining the amounts of the tobacco surcharges, Defendants increased the company's corporate assets.

96.    Defendants breached their fiduciary duties by: administering a noncompliant Plan; failing to make available the "full reward" to participants; failing to properly disclose material information about the wellness programs to participants; acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for years, to ensure compliance with ERISA's requirements. These breaches caused

45

CLASS ACTION COMPLAINT

Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from Apple. Had Defendants complied with their fiduciary duties, they would have noticed the deficiencies in the program and taken steps to correct the behavior. More importantly, they would have ensured that the surcharge proceeds were deposited into the Plan as additional funding, and safeguarded participants from bearing unlawful costs.

97.   As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

98.   Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek individual equitable relief necessary to redress Defendants' fiduciary breaches, including but not limited to restitution, surcharge, disgorgement, a constructive trust over improperly retained funds, and declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendants on all claims and requests that the Court awards the following relief:

A.   An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class

representative for the Class, and appointing the undersigned to act as Class Counsel;

B.     A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C.     An Order instructing Defendants to reimburse all persons who paid the unlawful and discriminatory surcharge;

D.     A declaratory judgment that Defendants breached their fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E.     An Order requiring Defendants to provide an accounting of all prior payments of the surcharges under the Plan;

F.     Declaratory relief as necessary and appropriate, including an Order that Defendants' program was unlawful and that Defendants should not further

47

CLASS ACTION COMPLAINT

violate the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendants collected;

I. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of their collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendants for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendants' fiduciary violations; disgorgement of any benefits and profits Defendants received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendants to stop imposing the unlawful and discriminatory surcharges on participants in the future.

CLASS ACTION COMPLAINT

K.    An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L.    An award of Plaintiff' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.    Any other relief the Court determines is just and proper.


Dated: April 17, 2026                              Respectfully submitted,


                                                   /s/ Michael Connett
                                                   _____

                                                   Michael Connett (Bar No. 300314)
                                                   **SIRI & GLIMSTAD LLP**
                                                   700 S Flower Street, Suite 1000
                                                   Los Angeles, CA 90017
                                                   Tel: (212) 532-1091
                                                   E: mconnett@sirillp.com

                                                   *Attorneys for Plaintiff and the Proposed Class*

49
CLASS ACTION COMPLAINT